UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BEEF PRODUCTS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL HESSE, <br><br> Defendant. | 4:17-CV-04130-KES <br><br><br> ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

Plaintiff, Beef Products, Inc., filed a complaint alleging that defendant, Michael Hesse, improperly solicited Beef Products' employees for employment with Hesse and Hesse's business, Automatic Equipment Manufacturing Co. Docket 64. Beef Products' amended complaint alleges four causes of action: breach of contract, breach of duty of loyalty, fraud in the inducement of contract, and declaratory judgment. *Id.* ¶¶ 31-58. Hesse filed counterclaims alleging a breach of contract claim and a breach of implied covenant of good faith and fair dealing claim. Docket 70 at 18-20. Hesse also requested a declaratory judgment that the non-solicitation provision of the contract was per se unenforceable. *Id.* at 17-18. Hesse moves for partial summary judgment. Docket 106. Beef Products opposes the motion. Docket 137. For the following reasons, the court denies Hesse's motion for partial summary judgment.

## FACTUAL BACKGROUND

The facts, viewed in the light most favorable to the non-moving party, are as follows:

Hesse began his employment at Beef Products on June 1, 1998. Docket 135 ¶ 7. During his time at Beef Products, Hesse served as Head of Sales and oversaw a fourteen-person sales group for over a decade. Docket 70 at 3; Docket 137 at 2. In June of 2016, Hesse informed Beef Products that he intended to leave Beef Products and run his family's company, Automatic. *Id.* at 3.

Automatic sells roller mills, hammer mills, rotary mills, towing products, and braking products. *Id.* at 4. Beef Products does not sell any of those products. *Id.* Beef Products produces and sells "lean finely textured beef." Docket 135 ¶ 1. Beef Products' customers include ground beef processors, supermarkets, and restaurants. *Id.* ¶ 3. Beef Products alleges that the limited amount of discovery received "suggests that Automatic was targeting the beef industry as a customer for its roller mills." Docket 137 at 5. Beef Products and Automatic compete over the allocation of resources and spending by customers in the beef industry. *Id.*

On August 3, 2016, Hesse and Beef Products entered into an agreement called the "Transitional Employment, On-Call Services Agreement and General Release" (Transition Agreement). *Id.*; Docket 64-1. The Transition Agreement stated that Hesse's full-time, regular employment at Beef Products would terminate on November 23, 2016 (Termination Date). Docket 64-1 at 1. For

thirty-six months after the Transition Agreement's effective date, Hesse agreed to continue on-call employment with Beef Products. *Id.* at 2-3. The Transition Agreement also contained a non-solicitation provision that applied to customers, vendors, suppliers, and employees. *Id.* at 3-4. The non-solicitation provision stated:

> Employee agrees that during the On-Call Period and for a period of one (1) year following the conclusion of the On-Call Period (the "Restrictive Period"), Employee will not, directly or indirectly, on Employee's own behalf or by aiding any other individual or entity . . . Solicit for employment any Company employee with whom Employee had personal contact during the twelve (12) month period immediately prior to the Termination Date.

*Id.* The Restrictive Period is from August 11, 2016 to August 11, 2020. Docket 137 at 6. The Transition Agreement did not contain any geographical limitations. *Id.*

On November 23, 2016, Hesse began to provide full-time services to Automatic and serve as the Chairman of Automatic. *Id.* at 11. Beef Products also used Hesse's services from November 23, 2016, to September 22, 2017 in line with the terms of the Transition Agreement. Docket 70 at 2-3.

Beef Products alleges that Hesse improperly solicited several employees of Beef Products' sales group to work at Automatic. Docket 64 ¶ 34. These employees include Chuck Szitas, Cameron Jacobs, Bryce Snyder, Britton Wall, and Alec Hannah (collectively, "Subject Individuals"). *Id.* ¶¶ 20-21. The Subject Individuals were at-will employees at Beef Products. Docket 137 at 12, 14, 16, 18, 19. Additionally, Szitas, Jacobs, Snyder, and Wall never signed non-compete or non-solicitation agreements with Beef Products. *Id.* at 20-30.

Between December of 2016 and August of 2017, the Subject Individuals ended their employment at Beef Products and started employment at Automatic. Docket 70 at 5.

## LEGAL STANDARD

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet its burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must inform the court of the basis for its motion and also identify the portions of the record that show there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). Summary judgment is precluded if there is a genuine dispute of fact that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the court views the facts and the inferences drawn from such facts " 'in the light most favorable to the party opposing the

4

motion.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

**DISCUSSION**

Hesse moves for summary judgment on two claims. Docket 106. First, Hesse moves for summary judgment on his declaratory judgment claim and argues that the Transition Agreement's non-solicitation provision is unenforceable as a matter of law. Docket 119 at 2, 4. Second, Hesse moves for summary judgment on Beef Products' breach of duty of loyalty claim and argues that the claim fails as a matter of law to the extent that the claim is based on Hesse's conduct after the Termination Date and based on mere solicitation of employees without competition. *Id.* at 3, 15, 22.

**I.    The Non-Solicitation Provision**

Hesse argues that the non-solicitation provision is per se unenforceable under South Dakota law. *Id.* at 4. Hesse contends that the non-solicitation provision is a restraint on trade because it restricts Hesse, and Automatic by extension, from recruiting and hiring certain individuals. *Id.* at 5-11. Beef Products argues that the non-solicitation provision is not a restraint on trade. Docket 134 at 11. Beef Products argues that the provision does not restrain Hesse or Automatic in their business or trade; instead, the provision narrowly prohibits Hesse from soliciting Beef Products' employees to Automatic. *Id.* at 12.

South Dakota law prohibits "[a]ny contract restraining exercise of a lawful profession, trade, or business[.]" SDCL § 53-9-8. There are three

exceptions to this general prohibition: (1) sale of good will; (2) dissolution of partnership; and (3) employees' covenants not to compete with an employer. *See* SDCL §§ 53-9-9 to 53-9-12. Unless one of the exceptions applies, "the agreement is invalid under the general rule." *Commc'n Tech. Sys., Inc. v. Densmore*, 583 N.W.2d 125, 128 (S.D. 1998). The court must construe these exceptions narrowly. *Id.*

Non-disclosure clauses and non-solicitation clauses are not a general restraint on trade because "under SDCL [§] 53-9-8, an agreement not to disclose information or solicit, unlike a covenant not to compete, is free from challenge as a general restraint on trade." *1st Am. Sys., Inc. v. Rezatto*, 311 N.W.2d 51, 57 (S.D. 1981); *see also Billion v. Oxford*, No. 4:15-CV-04179-KES, 2016 WL 3976636, at *4 (D.S.D. July 22, 2016). "[S]uch covenants are strictly construed and enforced only to the extent reasonably necessary to protect the employer's interest in confidential information." *Hot Stuff Foods, LLC v. Mean Gene's Enters., Inc.*, 468 F. Supp. 2d 1078, 1101 (D.S.D. 2006) (citing *Rezatto*, 311 N.W.2d at 57).

"Because a non-disclosure clause, unlike a non-compete clause, is not a general restraint on trade in South Dakota, it is not held to the same strict standard as a non-compete clause if the language is too broad." *Billion*, 2016 WL 3976636, at *4. This same analysis can be applied to non-solicitation clauses. *See, e.g., id.*; *Smith, Barney, Harris Upham & Co., Inc. v. Robinson*, 12 F.3d 515, 518 (5th Cir. 1994) (finding that non-recruitment covenants do not necessarily restrict a former employee's ability to compete and do not

6

significantly restrain trade); *Baker Petrolite Corp. v. Spicer*, 2006 WL 1751786, at *4 (S.D. Tex. June 20, 2006) (finding the non-recruitment agreement between an employer and employee was not a restraint on trade).

The court finds that the non-solicitation provision is not a general restraint on trade and is not prohibited under SDCL § 53-9-8. The non-solicitation provision does not restrain Hesse from exercising a lawful profession, trade, or business. The provision only prohibits Hesse from soliciting Beef Products' employees to Automatic. As Beef Products argues, the non-solicitation provision allows Hesse and Automatic "to carry on their business as usual at Automatic." Docket 134 at 12. Hesse is free to work at Automatic and perform numerous services. Hesse is even free to recruit personnel for Automatic—anywhere, any time, and from any organization—except the small group of employees at Beef Products, whom Hesse willingly agreed to not solicit. Similarly, Automatic can recruit employees from any organization, including Beef Products, as long as Hesse is not involved in the solicitation. Beef Products' employees are free to leave Beef Products and work at Automatic, as long as Hesse is not involved in the solicitation. The non-solicitation provision "simply does not meet the definition of the kinds of contracts covered by the statute." *Robinson*, 12 F.3d at 519. The court denies Hesse's motion for summary judgment on the non-solicitation provision's enforceability.

7

## II. Breach of Duty of Loyalty

Hesse moves the court to grant summary judgment on part of Beef Products' breach of duty of loyalty claim. Docket 119 at 15. First, Hesse asks the court "to narrow the window" of Beef Products' "duty of loyalty claim to conduct that occurred before the Termination Date[.]" *Id.* at 16. Second, Hesse asks the court to "eliminate the legal theory that solicitation of co-employees without competition or impeding competition can give rise to a breach of duty of loyalty claim." *Id.*

### A. Hesse's Employment Status After the Termination Date

Hesse argues that Beef Products' breach of loyalty claim fails as a matter of law as it relates to Hesse's conduct after November 23, 2016. Docket 119 at 16-17. Hesse argues that he had no duty of loyalty to Beef Products outside of the Transition Agreement after the Termination Date because he was an independent contractor. *Id.* at 17. Beef Products argues that whether Hesse was Beef Products' employee after the Termination Date is a disputed issue of material fact. Docket 134 at 26. Beef Products argues that it has put forth enough evidence in the record that a jury could determine that Hesse was a Beef Products employee and therefore, owed Beef Products a duty of loyalty. *Id.*

In South Dakota, an "employee owes a duty of loyalty to [his] employer." *Setliff v. Akins*, 616 N.W.2d 878, 886 (S.D. 2000). "An employee who has any business to transact on the employee's own account, similar to that entrusted to the employee by the employer, shall always give the employer the

8

preference." SDCL § 60-2-13. While employed, an employee cannot act contrary to his employer's interests. *Setliff*, 616 N.W.2d at 886.

Thus, whether Hesse owed Beef Products a duty of loyalty depends on his status as an employee or independent contractor. "[T]he ultimate determination of whether an individual is an employee or an independent contractor is a mixed question of law and fact[.]" *Egemo v. Flores*, 470 N.W.2d 817, 820 (S.D. 1991). "[E]ach case must be determined on its own facts and all the features of the relationship are to be considered." *Id.*

The parties dispute whether Hesse was an employee or an independent contractor of Beef Products. Hesse alleges that he was an independent contractor of Beef Products and provides factual allegations to support his position. *See* Docket 119 at 17. Conversely, Beef Products alleges that Hesse remained a Beef Products employee after the Termination Date. Docket 134 at 14. Beef Products also provides factual allegations to support its position. *See id.* at 14-16. There are substantial factual questions that a jury must decide in determining whether Hesse was an employee or independent contractor after November 23, 2016. Thus, the court denies summary judgment on this issue.

**B. Solicitation and Competition**

Next, Hesse argues that Beef Products' breach of duty claim fails "insofar as it is based on mere solicitation of employees of [Beef Products], without competition or impending competition." Docket 119 at 22. He argues that such a claim requires an advancement of a competing business. *Id.* at 22-23. Beef Products argues that Hesse's duty of loyalty goes beyond an agreement not to

9

compete. Docket 134 at 27. Beef Products contends that Hesse violated this duty when he "engaged in conduct that was contrary" to Beef Products' interest and was in direct competition to Beef Products. *Id.* at 29. Beef Products contends that this is a factual issue for a jury. *Id.*

Employees can violate their duty of loyalty to their employers in various ways. For example, "[e]mployees violate their duty of loyalty to their employer when they compete against their employer." *Carda v. E.H. Oftedal & Sons, Inc.*, No. 5:04-CV-05036-KES, 2005 WL 2086280, at *6 (D.S.D. Aug. 26, 2005). Additionally, employees, while employed, may not act contrary to their employer's interests. *Setliff*, 616 N.W.2d at 886. And "[a]n employee must prefer his employer's business interests to his own." *Bushman v. Pure Plant Food Intern. Ltd.*, 330 N.W.2d 762, 764 (S.D. 1983). "Therefore, while employees may lay plans and take limited steps to begin competing with their employers, employees who go too far risk violating their duty of loyalty." *Setliff*, 616 N.W.2d at 886. An employee may go "too far" by secretly communicating with, soliciting, and/or hiring employees or customers of his employer for such rival business before the end of his employment. *Carda*, 2005 WL 2086280, at *6 (citing *Setliff*, 616 N.W.2d at 886).

Beef Products alleges that Hesse breached his duty of loyalty to Beef Products by secretly communicating with and soliciting members of Beef Products' sales team for employment and by acting contrary to Beef Products' interests in making preparations to solicit Beef Products' employees while Hesse worked at Beef Products. Docket 64 ¶ 41. A jury could construe these

10

allegations as Hesse competing with Beef Products, acting against Beef Products' interests, or prioritizing his interests over Beef Products' interests, all of which are evidence of a breach of duty of loyalty.

Additionally, there are several genuine issues of material fact: (1) whether Hesse went too far in preparing to compete with Beef Products; (2) whether he solicited Beef Products' employees; and (3) whether Beef Products and Automatic are competitors. *See Setliff*, 616 N.W.2d at 886. Hesse alleges that it is undisputed that Automatic is not a competitor of Beef Products. Docket 109 ¶ 4. Beef Products objects to this allegation. Docket 137 at 4. Beef Products argues that "Automatic was looking to expand its sales in the agricultural industry, generally, and 'beef market,' specifically," which is Beef Products' market. Docket 134 at 19. Additionally, Automatic was organizing its sales by geographic region and assigning the Subject Individuals to the same regions they were assigned by Beef Products. *Id.* Thus, the court denies summary judgment on this issue because Beef Products' breach of the duty of loyalty claim does not fail as a matter of law and genuine issues of material fact exist.

## CONCLUSION

The non-solicitation provision is not a general restraint on trade, and therefore, is enforceable. Additionally, the court does not grant summary judgment on Beef Products' breach of duty claim because there are genuine issues of material fact. Thus, it is

ORDERED that Hesse's motion for partial summary judgment (Docket 106) is denied.

11

IT IS FURTHER ORDERED that Hesse's motion to stay discovery (Docket 107) and the third parties' motion to stay discovery (Docket 139) are denied as moot.

Dated November 14, 2019.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE