UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| BEEF PRODUCTS, INC., | 4:17-CV-04130-KES |
| Plaintiff, | |
| vs. | ORDER GRANTING MOTION TO COMPEL |
| MICHAEL HESSE, | |
| Defendant. | |

Plaintiff, Beef Products, Inc., filed a complaint against defendant, Michael Hesse, alleging a breach of contract claim for solicitation of employees. Docket 64. Beef Products moves to compel Hesse and interested parties, Automatic Equipment Manufacturing Co., Jeff Carlson, Cameron Jacobs, Alec Hannah, Chuck Szitas, Britton Wall, and Bryce Snyder[1] (collectively, "Third Parties"), to respond to specific discovery requests for production and forensic examinations. Docket 125. Hesse resists the motion to compel. Docket 132. The Third Parties also resist the motion. Docket 131. For the following reasons, Beef Products' motion to compel is granted.

## BACKGROUND

On January 26, 2018, Beef Products served its First Set of Interrogatories and its First Set for Request for Production on Hesse. Docket 127 ¶ 3; Docket 127-6. On February 9, 2018, Beef Products served Third-Party Subpoenas on Carlson, Jacobs, Wall, Szitas, Snyder, Hannah, and Automatic.

---

[1] Jacobs, Hannah, Szitas, Wall, and Snyder are collectively known as the Subject Individuals.

Docket 127 ¶ 4. Beef Products, Hesse, and the Third Parties participated in written discovery. *Id.* ¶ 5. There have been several discovery disputes between the parties; the parties have filed three motions to compel. *Id.* ¶ 5; *see* Dockets 32, 55, 80.

In a letter to Hesse's counsel, dated March 11, 2019, Beef Products identified eight outstanding categories of documents that were responsive to Beef Products' discovery requests. Docket 127 ¶ 6. On March 13, 2019, Hesse responded that the March 11th letter was the first time Beef Products raised these issues; he stated that he would "do [his] best to timely respond." Docket 127-1 at 8. On March 15, 2019, Hesse had not provided a substantive response to the March 11th letter, so Beef Products asked Hesse for a response date. Docket 127 ¶ 7; Docket 127-1 at 10. On March 19, 2019, Hesse responded that his "goal" was to provide a written response by April 1, 2019. Docket 127-1 at 12. On March 20, 2019, Beef Products asked Hesse and Automatic to provide a response by March 22 as to whether they intended to respond to Beef Products' requests or whether any documents would be produced. *Id.* at 14. That same day, Hesse responded that he produced several responsive documents and did not see how his production was deficient. *Id.* at 16. On March 21, 2019, Beef Products sent an email describing why Hesse's discovery was deficient. *Id.* at 19.

On March 22, 2019, Hesse emailed Beef Products a timeline regarding the current discovery dispute. *Id.* at 22-24. Hesse maintained his position that he produced all responsive documents and alleged that any attempt for judicial

2

relief for the dispute was premature. *Id.* at 23. On March 25, 2019, Beef Products responded that though Hesse had produced documents responsive to the eight categories of outstanding discovery, there were still "holes" in his production. *Id.* at 26-30. In this email, Beef Products provided a list of the types of documents it believed Hesse should produce in response. *Id.* at 26-29.

On March 27, 2019, Hesse responded that he was amendable to producing documents to respond to some of the requests, but he viewed other requests to be unduly burdensome and disproportionate. *Id.* at 32. Hesse informed Beef Products that he did not believe he could produce the requested documents by the April 3rd deadline because he was focused on producing other documents that were due April 8th. *Id.* The next day, Beef Products inquired about the date that the requested documents would be produced. *Id.* at 34. On April 1, 2019, Hesse emailed Beef Products that he was working with Automatic to produce documents around April 19th. *Id.* at 36. On April 19, 2019, Hesse began producing responsive documents. *Id.* at 40. But on April 23, 2019, Beef Products informed Hesse by email that he was still deficient in producing responsive documents beyond his initial production on April 19th. *Id.* at 42. Hesse did not respond. Docket 127 ¶ 11.

Beef Products also met and conferred with the Third Parties by phone and email to discuss the outstanding discovery, privilege and redaction logs, and forensic examination. *Id.* ¶ 12. On February 11, 2019, Beef Products and the Third Parties had a meet-and-confer call. *Id.*; *see* Docket 127-2 at 5-9. On the call, the Third Parties agreed to produce Carlson's supplemental production

responses and their privilege and redaction logs by March 15, 2019. Docket 127 ¶ 12. Beef Products inquired about conducting a forensic examination of the Third Parties' computer systems and devices. *Id.* ¶ 13; Docket 127-2 at 9.

Following the meet-and-confer call, the Third Parties informed Beef Products that they would not agree to a forensic examination. Docket 127-2 at 11. The Third Parties also requested two extensions of the deadline for their response to the February 11th letter and for production of the requested items. *Id.* at 18, 22; Docket 127 ¶ 14. Beef Products was reluctant to grant the extensions, but agreed to both. Docket 127 ¶¶ 14, 15; Docket 127-2 at 20, 24, 28. On two occasions Beef Products emailed the Third Parties inquiring about the status of the outstanding discovery. Docket 127 ¶ 15; Docket 127-2 at 24, 26. On April 23, 2019, Beef Products told the Third Parties that it intended to seek relief from the court because of the extended delay in production. Docket 127-2 at 32. In response, the Third Parties noted the large amount of discovery they were involved in and that they were continuing to work on producing supplemental discovery and the logs. *Id.* at 35.

On May 3, 2019, Beef Products filed the present motion to compel forensic examination and production of documents. Docket 125.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs the scope of discovery in civil matters, providing:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

> defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). If a party does not produce requested documents, the party seeking discovery requests may move for an order compelling production. *See* Fed. R. Civ. P. 37(a)(3)(B).

The scope of discovery under Rule 26(b) is extremely broad. *See* 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2007 (3d ed. 2015). The reason for the broad scope of discovery is that "[m]utal knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Id.* (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). The federal rules distinguish between discoverability and admissibility of evidence. Thus, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial. But these considerations are not inherent barriers to discovery. *Christensen v. Quinn*, 2013 WL 1702040, at *4 (D.S.D. Apr. 18, 2013).

## DISCUSSION

### I. Michael Hesse

Beef Products moves to compel Hesse to produce relevant, non-privileged documents responsive to Beef Products' First Set of Requests for Production (Docket 127-6). Docket 125 at 1; Docket 126 at 17-18. Beef Products alleges

that Hesse has outstanding or deficient discovery for seven categories of

documents. Docket 126 at 18-19; *see also* Docket 127-1 at 4-6. Hesse argues

that he produced all responsive documents for these requests and

supplemented his responses. Docket 132 at 3. The court will address each of

the seven categories in turn.

### A. Documents Evidencing Salary, Bonus, and Benefits Paid to the Subject Individuals for the Relevant Time Period

Beef Products made a number of requests for production that relate to

the compensation and benefits of the Subject Individuals. Docket 127-1 at 5.

> REQUEST NO. 19: Any and all DOCUMENTS RELATING TO the compensation AUTOMATIC has paid or will pay each of the SOLICITED EMPLOYEES, including, but not limited to, salary, bonus, and benefits.
>
> .    .    .
>
> REQUEST NO. 22: Any and all DOCUMENTS sufficient to show the compensation AUTOMATIC has paid or will pay individuals within AUTOMATIC's sales group or department during the RELEVANT TIME PERIOD, including, but not limited to, salary, bonus, and benefits.
>
> .    .    .
>
> REQUEST NO. 71: ANY and all DOCUMENTS RELATING TO compensation paid to the SOLICITED EMPLOYEES during the RELEVANT PERIOD, including, but not limited to, commissions, "fixed salary," and "perks."

Docket 127-6 at 12, 13, 20.

Hesse objects to this category and argues that he produced the personnel

files for the Subject Individuals. Docket 132 at 3. Hesse states that the

personnel files contain compensation information, W-2s showing 2017 and

2018 salaries, benefit information, employee handbook, and documents

covering travel, vacation, and retirement information. *Id.* Hesse also argues that if Beef Products has any additional questions regarding this topic, Beef Products can ask such questions at the depositions. *Id.* at 4.

Beef Products contends that the personnel files do not contain sufficient information to fully respond to the requests. Docket 142 at 13. First, Beef Products would like Hesse to produce W-2s from 2016. *Id.* Second, Beef Products alleges that the benefits information only pertains to those currently offered in 2019 and does not provide information for 2016-2018. *Id.* at 14.

Hesse does not object to the relevancy of these requests. Thus, the court considers the requests to be relevant. Hesse needs to produce W-2s for the Subject Individuals and Automatic's employees for 2016. Additionally, Hesse must produce any benefit documents for the Subject Individuals and Automatic's other sales employees for 2016-2018.

### B. Documents Evidencing the Start of Health and/or other Benefits for the Subject Individuals

Beef Products' requests #19 and 22 call for the production of documents that refer to the start of benefits for the Subject Individuals. Docket 127-1 at 5; Docket 127-6 at 12, 13. Hesse objects to the motion as it relates to this category and argues that the category does not fall within the scope of the requests. Docket 132 at 5.

Request #19 pertains to "any and all documents *relating*" to compensation including benefits. Docket 127-6 at 12 (emphasis added). The

term "relating" encompasses the start date of health and other benefits. Thus, this objection is overruled.

Hesse also objects to this category because he already produced this information. Hesse alleges that he produced information regarding benefits given to the salespeople (health, financial, and wellness benefits) and information about offer and hire dates for the Subject Individuals. Docket 132 at 5. Beef Products argues that Hesse has not produced any documents that show the date the Subject Individuals started to receive benefits from Automatic. Docket 142 at 15. The documents produced showing the offer and hire dates are not responsive to the requests for production on the benefits' start dates. The fact that an employee was offered a job or hired on a certain date does not illustrate when the employee began to receive benefits.

Beef Products' motion to compel for this category of documents is granted. Hesse should provide any documents that show the start of health and/or other benefits for the Subject Individuals.

### C. Full Salary and Compensation Information for Individuals Employed in Sales Positions at Automatic other than the Solicited Employees, including Bonus and Commission Payments, for 2015-2018

Beef Products requested the production of full salary and compensation information, including bonus and commission payments, for Automatic's other salespeople for 2015-2018. Docket 127-1 at 5. This category of information relates to request #22. *See* Docket 127-6 at 13. Hesse has two objections to this category.

First, Hesse argues that the documents of other Automatic salespeople, other than the Subject Individuals, are not relevant to Beef Products' claims. Docket 132 at 5. Beef Products argues that this category is relevant. Docket 142 at 15-16. Additionally, Beef Products alleges that Hesse's own counterclaim puts Automatic's salespeople's compensation at issue. *Id.* at 15.

The compensation of Automatic's employees is relevant to Beef Products' breach of contract claim and Hesse's declaratory judgment counterclaim. A discrepancy in pay between the Subject Individuals and Automatic's employees could be evidence or could lead to admissible evidence that Hesse changed the compensation and benefits plans to solicit the Subject Individuals. This objection is overruled.

Second, Hesse states that he produced documents that show compensation and benefits for Automatic's salespeople. Docket 132 at 5. Beef Products argues that the personnel files produced do not show compensation for non-solicited employees for 2015-2018. Docket 142 at 15. Hesse only produced personnel files and W-2s for the Subject Individuals. Docket 132 at 5-6. But Beefs Products' request permissibly extends to all Automatic employees, including non-solicited employees.

Beef Products' motion to compel this category of documents is granted. Hesse should produce documents that show compensation for Automatic's employees, including non-solicited employees, for 2015-2018. *See* Docket 127-1 at 27 (listing specific documents Beef Products seeks for this category).

**D.    Automatic's Business/Strategic/Sales Plans and Strategies for the Relevant Time Period**

Beef Products requested production of Automatic's business and sales plans. Docket 127-1 at 5.

> REQUEST NO. 35: Any and all DOCUMENTS RELATING TO AUTOMATIC's business plan during the RELEVANT TIME PERIOD, including, but not limited to, sales plans, strategies, and goals.

Docket 127-6 at 15.

Hesse objects to this request and argues that it is irrelevant, overbroad, unduly burdensome, and not proportional to the needs of the case. Docket 132 at 6. The court finds that this request is relevant. Automatic's business, strategic, and sales plans for the relevant time period could demonstrate that Hesse and Automatic modeled the business's growth and sales based on their plan for the Subject Individuals to work at Automatic. Hesse has not shown how production for this category would be unduly burdensome, and the court finds that this request is sufficiently narrowly tailored that it is not overly broad because the request is limited to the "relevant time period."

Also, Hesse alleges that he has already produced documents for this request and supplemented his responses. Docket 132 at 6; Docket 133 ¶ 5(j)-(k). Hesse argues that Beef Products failed to explain why additional production would be relevant. Docket 132 at 7. Beef Products acknowledges that Hesse produced responsive documents from 2017, but alleges that there is no information from 2016, except a spreadsheet dated June 30, 2016, which

contains Hesse's personal expenses and other "non-relevant" projections. Docket 142 at 16-17.

On March 25, 2019, Beef Products' counsel sent Hesse's counsel by email a list of specific documents it was seeking under each category and why the documents produced at that time were deficient. Docket 127-1 at 26-30. For this category, Beef Products stated that it was looking for "[a]ny documents, spreadsheets, or communications discussing Automatic's business or sales plans" for 2015, 2016, 2017, and 2018. *Id.* at 28.

Beef Products' motion to compel for this category is granted. Hesse should produce any documents that are responsive to the request, specifically any documents listed in Beef Products' email (Docket 127-1 at 28).

### E. Automatic's Forecasted and/or Projected Sales for the Relevant Time Period

Beef Products requested production of information and documents containing Automatic's forecasted and/or projected sales. Docket 127-1 at 5.

> REQUEST NO. 36: Any and all DOCUMENTS RELATING TO AUTOMATIC's forecasted or projected sales during the RELEVANT TIME PERIOD.

Docket 127-6 at 15.

Hesse objects to this request and argues that such information is not relevant. Docket 132 at 7. The court finds this category is relevant. This information could show that Automatic was acting on its belief that the Subject Individuals would join the company if the projected sales show that Automatic forecasted an increase in sales over time.

Hesse also argues that he produced responsive documents, and any additional production is not relevant or proportional to the needs of the case. Docket 132 at 7. Beef Products alleges that Hesse has not produced any sales projections from before 2017. Docket 142 at 18. Beef Products only received Automatic's 2016 sales projection because "someone at Automatic decided to forward the information" to a Beef Products email account. *Id.* at 17. Beef Products acknowledged that Hesse produced an email and attachment regarding sales targets for Snyder, but failed to produce similar documents for the other Subject Individuals. Docket 127-1 at 28.

Beef Products' motion to compel for this category is granted. Hesse should produce any and all documents showing Automatic's sales projections and plans from 2016-2018.

### F. Automatic's Sales Budget, including Amounts Budgeted for Compensation to Individuals in the Sales Group or Department, for the Relevant Time Period

Beef Products requested production of information and documents detailing Automatic's sales budget. Docket 127-1 at 5.

> REQUEST NO. 37: Any and all DOCUMENTS RELATING TO AUTOMATIC's sales budget during the RELEVANT TIME PERIOD, including but not limited to amounts budgeted for compensation to individuals in the sales group or department.

Docket 127-6 at 15.

Hesse objects to this request and argues that such documents are not relevant, though he still produced responsive documents. Docket 132 at 8. He contends that any further production is not relevant or proportional to the

12

needs of the case. *Id.* Beef Products contends that Hesse only produced one document from 2016 and it was not responsive to the request. Docket 142 at 18. The court finds that this category is relevant. This information can show whether Automatic budgeted for the Subject Individuals before Hesse signed the Transition Agreement. As to Hesse's production, the lone document from 2016 does not adequately respond to this category.

Beef Products' motion to compel for this category is granted. Hesse should produce any documents in his possession that are responsive to this request for 2015-2018. *See* Docket 127-1 at 28-29.

### G.      Automatic's Sales, including Sales by Product, Region, and Salesperson, during the Relevant Time Period

Beef Products requested production of information and documents containing Automatic's sales. Docket 127-1 at 5.

> REQUEST NO. 38: DOCUMENTS sufficient to show AUTOMATIC's sales during the RELEVANT TIME PERIOD, including, but not limited to, sales by product, sales by region, and sales by salesperson.

Docket 127-6 at 15.

Hesse objects to this category and argues that the category is not relevant. Docket 132 at 9. The court finds that Automatic's sales information is relevant. This information could establish whether Automatic's agriculture sales increased consistent with Hesse's plan to use the Subject Individuals to grow Automatic's sales. It could also be used to evaluate Automatic's needs to hire the Subject Individuals and identify income disparities between the Subject Individuals and other Automatic employees. Beef Products intends to

compare Automatic's sales figure pre-Subject Individuals with the sales figures after the Subject Individuals started at Automatic. *See* Docket 142 at 19.

Hesse also alleges that he already produced responsive documents and any further production would be irrelevant. Docket 132 at 8, 9. Beef Products contends that Hesse has not produced any sales information prior to 2017. Docket 142 at 19. Beef Products acknowledges that Hesse has produced responsive documents from 2017, but is seeking additional information and documents from 2017 and other years. *See* Docket 127-1 at 29.

Beef Products' motion to compel for this category is granted. Hesse should produce any documents that are responsive to this category, except the documents already produced by him.

## II.     Third Parties

### A.     Privilege and Redaction Logs

Beef Products moves to compel privilege and redaction logs from the Third Parties under Rule 45 of the Federal Rules of Civil Procedure. Docket 126 at 16, 20. Beef Products states that the Third Parties have not produced a single privilege or redaction log. *Id.* at 16, 21. The Third Parties argue that the motion should be denied as moot because they intend to comply with Beef Products' request and are working on producing the logs. Docket 131 at 1 n.1.

Rule 45 of the Federal Rules of Civil Procedure requires privilege and redaction logs. *See* Fed. R. Civ. P. 45(e)(2). When a party withholds subpoenaed information based on a claim of privilege or attorney work product material, the withholding party must "expressly make the claim" and "describe the nature of

the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." *Id.*

Beef Products states that the Third Parties produced documents with "unexplained redactions and missing information." Docket 142 at 4. The parties originally agreed that the Third Parties would disclose their privilege and redaction logs by March 15, 2019. Docket 127-2 at 8. As of May 3, 2019, when Beef Products filed its motion to compel, the Third Parties had not provided any logs. Docket 126 at 21.

Beef Products' motion to compel as it pertains to the Third Parties' privilege and redaction logs is granted. The Third Parties shall provide privilege and redaction logs to Beef Products on or before December 20, 2019.

### B.    Deposition Documents

Beef Products moves to compel Automatic to produce documents referenced during its Rule 30(b)(6) deposition. Docket 126 at 21. Beef Products requests the production of the following documents: (1) signed preservation documents; (2) document search queries and parameters; and (3) Automatic's employee handbook. *Id.* at 22. Beef Products contends that the deponents referred to these documents during depositions, but the documents have not been produced by Automatic. *Id.* at 21-22. The court will address each of these documents in turn.

### 1.    Signed Preservation Documents

Beef Products contends that the signed preservation documents referenced by Ellen Kietzmann are relevant to determine whether Automatic's conduct in producing documents was improper. Docket 126 at 23. Automatic argues that the motion to compel should be denied because the preservation documents are protected by the attorney-client privilege. Docket 131 at 5 n.2. Beef Products argues that the documents are not privileged. Docket 126 at 22.

The attorney-client privilege protects litigation hold letters. *Nekich v. Wis. Cent. Ltd.*, 2017 WL 11454634, at *5 (D. Minn. Sept. 12, 2017); *Brown v. W. Corp.*, 287 F.R.D. 494, 499 (D. Neb. 2012) (stating litigation hold letters are privileged). An exception to this privilege exists when a party demonstrates spoliation. *See Nekich*, 2017 WL 11454634, at *5; *see also Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 482 (D. Del. 2012). Additionally, the information surrounding the letters is not privileged:

> The people to whom the letter was sent, the directions for preservation, the sources identified for search, the terms used for the search, the defendant's continued efforts to ensure compliance, and any other information relevant to the scope and depth of the preservation or the search must be disclosed in detail so that precise objections can be made and so that defendant's search can be effectively reviewed[.]

*Brown*, 287 F.R.D. at 499.

Beef Products alleges that "Automatic's position, combined with its refusal to cooperate in discovery, demonstrates that Automatic acted improperly when it collected and reviewed documents for responsiveness." Docket 142 at 10; *see also* Docket 126 at 23. Beef Products "questions the

nature of the supposed preservation document" and alleges that Automatic failed to preserve documents. Docket 142 at 10. Beef Products' argument does not amount to spoliation.

Though Beef Products has not demonstrated spoliation to warrant production of the litigation hold letter itself, Beef Products has demonstrated that Automatic's search for relevant documents suggests an "unguided, unreliable search." *Brown*, 287 F.R.D. at 500. The affidavit of Automatic's counsel describing the preservation process (Docket 131-1 ¶¶ 9-10, 13) and the affidavit of the firm's IT employee describing the search process (Docket 150-2) are "not sufficiently detailed to determine whether [Automatic] has reasonably complied with [Beef Products'] request for production." *Brown*, 287 F.R.D. at 500. Thus, Automatic shall provide all the information surrounding the litigation hold letter issued by Automatic's counsel.

### 2. Document Search Queries and Parameters

Beef Products argues that the search queries are relevant and not privileged. Docket 126 at 23. Automatic contends that the motion should be denied because Beef Products has refused to furnish its own search queries to Hesse—thus, if the litigating parties have not exchanged their search queries, then a third party should not be compelled to provide them. Docket 131 at 5 n.3. In its reply, Beef Products states that it is willing to exchange this information for reciprocal treatment by Automatic. Docket 142 at 10-11.

Parties are entitled "to know what search criteria was used in retrieving relevant ESI." *Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc.*, 2011 WL

1002835, at *4 (E.D. Mich. Feb. 17, 2011); *see also FormFactor, Inc v. Micro-Probe, Inc.*, 2012 WL 1575093, at *7 n.4 (N.D. Cal. May 3, 2012) (stating that search terms are "not subject to any work product protection" and are discoverable to show that an adequate search was conducted).

Beef Products' motion to compel as it pertains to search queries is granted. In effort to make discovery cooperative, Beef Products, Hesse, Automatic, and the other Third Parties must provide their search queries and parameters to the other parties by December 20, 2019.

### 3.    Automatic's Employee Handbook

Beef Products argues that Automatic's employee handbook is relevant and should be produced by Automatic. Docket 126 at 22-23. Automatic argues that the motion should be denied as moot because Hesse already produced the handbook. Docket 131 at 1 n.1. Beef Products alleges that Hesse produced "what appears to be" the handbook, but the metadata associated with the document is missing. Docket 142 at 9 n.3.

A claim of duplication does not protect a person from having to produce documents in the first instance that may also have been produced previously by another party. *United States v. Three Bank Accounts*, No. 4:05-CV-04145-KES, 2008 WL 915199, at *5 (D.S.D. Apr. 2, 2008). Thus, Automatic's duplication argument is not a valid objection. Furthermore, the authenticity of the handbook produced by Hesse has been questioned by Beef Products. *See* Docket 142 at 9 n.3; Docket 143-2 at 2.

Beef Products' motion to compel as it pertains to the handbook is granted. The handbook in possession of Automatic is relevant and should be produced.

### C.    Carlson's Supplemental Documents

Beef Products requested supplemental documents regarding Carlson's new email account. Docket 127-2 at 8. Beef Products alleges that Carlson did not produce any supplemental documents, though he said he would. Docket 126 at 17. Carlson states that he is working on supplementing his email production, and thus, the court should deny the motion to compel as moot because he intends to comply. Docket 131 at 1 n.1.

Carlson has had adequate time to produce these supplemental documents and has failed to do so. On March 14, 2019, Carlson's counsel requested a seven-day extension. Docket 127-2 at 18. Beef Products agreed to a three-day extension. *Id.* at 20. On March 18, 2019, the new deadline, Carlson's counsel informed Beef Products that they were still working on the supplemental documents and would produce them by March 20, 2019. *Id.* at 22. On March 25 and 26, 2019, Beef Products asked Carlson's counsel for an update on the supplemental documents. *Id.* at 24, 26. The parties had a telephone conversation and Beef Products agreed to move the deadline to April 5, 2019. *Id.* at 28. On April 23, 2019, Beef Products still had not received the supplement documents from Carlson and reached out to counsel. *Id.* at 32. On April 26, 2019, Carlson's counsel responded that they were still working on the supplement. *Id.* at 35.

As of May 3, 2019, the date Beef Products filed its motion to compel, Carlson had not produced any supplemental documents. Docket 126 at 17. Since the motion was filed, Carlson produced 90 pages. Docket 142 at 4. Additionally, on June 4, 2019, Carlson produced another 61 pages. *Id.* at 5. Beef Products, however, claims that these pages are "meaningless and irrelevant" to claims and do not contain any metadata. *Id.*

Beef Products' motion to compel as it relates to Carlson's supplemental discovery is granted. Carlson shall produce these documents on or before December 20, 2019.

### D.     Requests for Forensic Examination

Beef Products argues that the Third Parties must submit to a forensic examination under Rule 34 of the Federal Rules of Civil Procedure. Docket 126 at 8, 24. Beef Products argues that the Third Parties "self-selected documents" to produce in discovery, the productions have significant discrepancies and missing documents, and the volume of produced documents is "meager." Docket 126 at 9, 11, 13, 15, 25, 29. Additionally, Beef Products notes that the Third Parties will not be prejudiced by a forensic examination because Beef Products will pay the associated costs. *Id.* at 9, 11, 13, 29.

In authorizing a forensic examination, the court relies on a host of factors: (1) the record evidence suggesting the likely loss of potentially significant corporate documents (mainly emails); (2) the record evidence that defendants failed to make an adequate search for documents; (3) evidence of certain anomalies in the documents produced (including emails that may have

been altered, and contradictory or absent metadata); and (4) incomplete production of documents even in the last few months. *See Klipsch Grp., Inc. v. Big Box Store Ltd.*, 2014 WL 904595, at *7 (S.D.N.Y. Mar. 4, 2014).

Beef Products has shown that serious questions exist as to the reliability and the completeness of materials produced in discovery by the Third Parties. First, the record suggests the likely loss of potentially significant emails. When Third-Party counsel asked the Subject Individuals where certain emails were and what happened to them, the Subject Individuals stated that "they 'do not have a good explanation' for what happened to those emails." Docket 127-2 at 9. Third-Party counsel stated that the emails were not deleted with any motive, but they could not provide a good explanation as to why the emails were not produced. *Id.*; *see White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 2009 WL 722056, at *8 (D. Kan. Mar. 18, 2009) (granting a forensic examination when there were discrepancies within the produced documents and the party could not explain the discrepancies).

Second, the process used by the Third Parties creates questions about the adequacy of the search. The Third-Party Subpoenas were sent out in March of 2018. Docket 150-2 ¶ 4. The Third-Party individuals conducted initial searches of their own email accounts and then provided responsive documents to counsel. *Id.* ¶ 5. In April of 2018, Third-Party counsel contacted its IT department regarding the collection of electronic information from the Third Parties. *Id.* ¶ 6. At this point, IT obtained "full and complete" access to the individuals' email accounts. *Id.* ¶ 7. IT downloaded and exported "the entirety

of the contents of each email account." *Id.* ¶ 8. But IT only got full access to the email accounts a month after subpoenas were issued and after the individuals already conducted their own searches. It is possible the individuals deleted incriminating evidence during their initial searches. The download of the email accounts—after the fact—may not show these deleted emails; but a forensic examination can show if such deletion occurred.

Furthermore, the discrepancies of discovery are highlighted by the fact that Carlson and the Subject Individuals produced some emails from their accounts, but not the same emails Hesse produced that had been exchanged between Hesse and the Subject Individuals. Docket 126 at 13. For example, though Carlson and the Subject Individuals alleged they have produced everything responsive to the discovery requests (Docket 132 at 8), they failed to produce emails from 2016, which Hesse produced. *See* Dockets 127-11 to 127-18 (emails). *See Ameriwood Indus., Inc. v. Liberman*, 2006 WL 3825291, at *3 (E.D. Mo. Dec. 27, 2006) (allowing a forensic examination when a non-party produced an email that the defendants failed to produce in response to discovery requests because other deleted or active version of emails may have still existed on the defendants' computers); *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 317 (S.D.N.Y. 2003) ("Zubulake herself has produced over 450 pages of relevant e-mails, including e-mails that would have been responsive to her discovery requests but were never produced by UBS. These two facts strongly suggest that there are emails that Zubulake has not received that reside on UBS's backup media.").

The Third Parties state that they did not produce these emails because Hesse had already produced them. Docket 132 at 8, 9. But the objection of duplicative discovery is not valid. *Three Bank Accounts*, 2008 WL 915199, at *5.

Third, there is evidence of anomalies in the documents produced. Beef Products alleges that there were instances where different producing parties produced a different version of the same document. Docket 142 at 7. Additionally, Beef Products alleges that there has been missing or altered metadata. Docket 126 at 10. There are at least three instances of missing metadata. In a letter to Hesse and Third Parties dated February 18, 2019, Beef Products noted that there were issues with the authenticity of text messages. Docket 127-2 at 6. Beef Products wanted the produced text messages to be in native form with metadata intact. *Id.* Hesse and the Third Parties stated that they were not sure that metadata existed for the text messages, but were potentially open to looking at whether the metadata could be recovered but at cost to Beef Products. *Id.* In this same letter, Beef Products noted that there was missing metadata from Automatic's production, but Automatic later produced this metadata. *Id.* Beef Products considered this issue to be resolved. *Id.* On May 30, 2019, Beef Products' counsel emailed Hesse's counsel asking for metadata for Hesse's supplemental production. Docket 143-2 at 2. In response, Hesse provided that metadata. *Id.* On June 4, 2019, Carlson produced supplemental documents, but none of them contained any metadata.

Docket 142 at 5. Overall, the missing metadata throughout discovery weighs in favor of authorizing a forensic examination.

Fourth, there has been incomplete production of documents as demonstrated by this motion to compel. Carlson and Automatic, specifically, failed to produce requested and/or supplemental discovery. And as discussed under the second factor, production has been incomplete because Hesse has produced documents that the Third Parties should have produced, but did not.

Beef Products has adequately shown that sufficient questions exist, not only with respect to these emails but also with respect to other discrepancies in the Third Parties' discovery responses, such that a forensic examination of Automatic, Carlson, and the Subject Individuals' computer hard drives and email accounts is warranted. Whatever documents or data may be recovered in the examination, whether existing documents, recovered deleted documents, or other information, should all be produced first to the Third Parties' counsel for its review as to relevance, responsiveness, and privilege, prior to any disclosure to Beef Products or its counsel. *See,* for example, inspection protocol discussed in *Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1054-55 (S.D. Cal. 1999).

## CONCLUSION

Hesse must produce all the relevant, non-privileged documents in his possession that are responsive to the seven outstanding categories of discovery. Automatic must produce its search queries, employee handbook, information surrounding the preservation documents, and privilege and redaction logs.

24

Carlson must produce his outstanding supplemental production. The Subject

Individuals and Carlson must produce their privilege and redaction logs. All the

Third Parties must submit to a forensic examination of their computer systems

and email accounts. Thus, it is

ORDERED that Beef Products' motion to compel (Docket 125) is granted.

Dated December 16, 2019.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE